**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **YUSUF KALYANGO, Ph.D.,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:22-cv-2028** |
| | : | |
| **v.** | : | **Chief Judge Algenon L. Marbley** |
| | : | |
| **OHIO UNIVERSITY,** *et al.*, | : | **Magistrate Judge Elizabeth P. Deavers** |
| | : | |
| **Defendants.** | : | |

**<u>OPINION & ORDER</u>**

This matter is before this Court on Defendants' Motion for Judgment on the Pleadings. (ECF No. 13). For the reasons stated, the Motion is **GRANTED in part and DENIED in part**.

**I.      BACKGROUND**

**a.  Ohio University Investigations and Termination**

On April 24, 2022, Plaintiff, Dr. Yusuf Kalyango, Ph.D., brought this action against Defendants: (1) Ohio University ("OU"); (2) the OU Board of Trustees; (3) M. Duane Nellis, President of OU; (4) Chaden Djalali, Executive Vice President and Provost of OU; (5) Brian Scott Titsworth, Dean of OU's Scripps College of Communication; (6) Robert K. Stewart, Director of OU's E.W. Scripps School of Journalism; (7) George Antonio Anaya, Civil Rights Investigator in OU's Office for Equity and Civil Rights Compliance; (8) Sarah L. Trower, Executive Director of OU Office of Civil Rights Compliance and Title IX Coordinator; and (9) Michal S. Sweeney, tenured professor of journalism history at OU. (ECF No. 1, ¶¶ 1–9). Plaintiff alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-1, *et seq.*, (hereinafter referred to as "Title VII"), the Civil Rights Act of 1991, 42 U.S.C. § 1981, as amended; and the Ohio Civil Rights Act, Ohio Revised Code Chapter 4112.01, *et. seq.* (ECF No. 1 at 2).

1

Plaintiff was a tenured professor of journalism, media, and broadcast news, supervised Ph.D. candidates, and oversaw study abroad programs at OU's College of Journalism. (ECF No. 1, ¶¶ 17–26). In February 2017, a female graduate student who worked for Plaintiff on a study abroad program, made a Title IX sexual and workplace harassment complaint against him. (*Id.*, ¶¶ 27–34). In July 2017, George Anaya, the Civil Rights Investigator in OU's Office for Equity and Civil Rights Compliance ("ECRC"), began an investigation into the accusations. (*Id.*, ¶¶ 37–38). Plaintiff not only denied the graduate student's accusations but argues that OU's Human Resources office helped the student fabricate the complaint and that Mr. Anaya conducted a flawed, results-oriented investigation that lacked proper protocol. (*Id.*, ¶ 40). Plaintiff alleges that his accuser produced no evidence of her allegations, and that Mr. Anaya disregarded several key witnesses Plaintiffs presented to him to corroborate Plaintiff's side of the story. (*Id.*, ¶¶ 41–42). Additionally, in February 2018, Plaintiff's accuser filed a retaliation complaint against Plaintiff on behalf of another individual who was not admitted into the School of Communication's doctoral program because that individual had been a witness to the graduate student's initial complaint against Plaintiff. (*Id.*, ¶ 71). Plaintiff also denied these claims.

On August 24, 2018, Mr. Anaya produced a report detailing the harassment claim and his findings, which Defendant maintains was the result of discriminatory animus because Plaintiff is a black male of Ugandan descent. (*Id.*, ¶¶ 1, 44–45). As a result of Mr. Anaya's report, Plaintiff alleges the Dean of the Scripps College of Communications, Brian Titsworth, and the School Director, Robert Stewart, suspended Plaintiff from teaching, reassigned him to administration of external grant applications and other activities, and banned him from representing the university at academic conferences. (*Id.*, ¶ 52, 65–66). Plaintiff argues that their decision was premature and was in retaliation for Plaintiff previously complaining to Director Stewart that Professor and Chair

of the graduate admissions committee, Michael S. Sweeney, favored non-minority, American students for admission over minority international students. (*Id.*, ¶¶ 60, 67–68).

In January 2019, the graduate student who brought the first sexual harassment complaint against Plaintiff sued both Plaintiff and the University, alleging that Plaintiff had sexually harassed her and that the University had been deliberately indifferent to the harassment. (ECF No. 13 at 2) (hereinafter "Case One"). Between March and April 2019, Plaintiff filed cross and third-party claims in the proceedings against OU, Mr. Anaya, Ms. Trower, Mr. Djalali, and other senior university officials asserting violation of due process and discrimination under Title IX. (ECF No. 1, ¶ 72; *see Tess Herman v. Ohio University & Yusuf Kalyango*, No. 2:19-cv-00201 (S.D. Ohio 2019) (these claims were subsequently dismissed)). Ultimately, the Plaintiff and OU reached resolution with the student, and the case was terminated on June 2, 2020. (ECF No. 13 at 2).

Plaintiff argues that in retaliation for filing civil litigation and for failing to admit the student who was the subject of the second complaint, Professor Sweeney directed a smear campaign against him, publicly disclosed the investigation to other journalism school staff, and "relayed discriminatory animus" to Mr. Anaya during his investigation of the second complaint made against Plaintiff. (*Id.*, ¶ 73–75). Plaintiff alleges that during this time, Professor Sweeney and Mr. Anaya revived a sexual assault complaint that had been made against Plaintiff, investigated, and dismissed in 2012 by a third graduate student. (*Id.*, ¶¶ 75–77). Plaintiff argues that Mr. Anaya contacted the former student, had her reformulate her story to accuse Plaintiff of wrongdoing anew, and used that information to conclude that Plaintiff had violated OU's sexual harassment policy. (*Id.*, ¶¶ 78–79). On May 30, 2019, Mr. Anaya released another report concluding that Plaintiff's conduct was "severe enough to create an intimidating, hostile, and

offensive educational and work environment," which Plaintiff alleges was in retaliation for Plaintiff naming Mr. Anaya as a defendant in his civil litigation. (*Id.*, ¶¶ 80–83).

In October 2019, Plaintiff alleges that Provost Djalali initiated the University Professional Ethics Committee ("UPEC") to review the third, but oldest, student complaint. (*Id.*, ¶ 84). Plaintiff argues that the UPEC was composed of only Caucasian faculty and refused to interview him or consider his evidence, and instead issued a report in November 2019 "rubber-stamping" Mr. Anaya's conclusions and recommending Plaintiff for de-tenure. (*Id.*, ¶¶ 84–90). Director Stewart also wrote a letter on behalf of the journalism faculty recommending Plaintiff for de-tenure, which Plaintiff argues was a false misrepresentation because many of the staff did not believe Plaintiff should be de-tenured. (*Id.*, ¶¶ 97–99). In response, Plaintiff filed a formal complaint against Director Stewart with OU's ECRC office for prejudice and conducting a procedurally flawed review of the claims against Plaintiff. (*Id.*, ¶ 102). Plaintiff maintains that Dean Titsworth then refused to meet with Plaintiff to hear his side of the story, and instead stripped Plaintiff of any monetary compensation and sent a letter to the university's provost recommending loss of tenure. (*Id.*, ¶¶ 103–04). During this time, Plaintiff also filed three other complaints for discrimination on the basis of race and national origin against Director Stewart, Dean Titsworth, and Provost Sayrs—investigations which he states were undermined by senior university officials. (*Id.*, ¶¶ 121).

On September 11, 2020, Plaintiff filed a new civil action against OU alleging that during their investigations of the complaints, OU: (1) discriminated against him on account of his race, national origin, and gender; and (2) violated his right to contract under 42 U.S.C. § 1981 and Ohio state law. (ECF No. 13 at 2; *see Kalyango v. University of Ohio*, Case No. 2:20-cv-4729) (hereinafter "Case Two")). Defendants allege that Plaintiff's claims were based on an Equal

Employment Opportunity Commission ("EEOC") charge he had filed in on April 11, 2019 for race and national origin discrimination and retaliation, but not sex discrimination. (*Id.*).

Plaintiff maintains that OU's Faculty Handbook section on de-tenure, requires an evidence-based hearing before the Faculty Senate Committee ("FSC") during which OU and the professor at issue can put forward exhibits, witness testimony, and arguments. (*Id.*, ¶¶ 123). Plaintiff's faculty hearing occurred December 9–10, 2022, during which Plaintiff presented evidence from fourteen witnesses, including former students, professors, and other OU staff. (*Id.*, ¶ 124). The FSC determined the charges were not proven and recommended that Plaintiff be reinstated immediately. (*Id.*, ¶ 125). On March 1, 2021, the OU Board of Trustees objected to the FSC's findings and asked for the FSC's reconsideration. (ECF No. 23 at 9). Plaintiff alleges that on April 2, 2021, the FSC reaffirmed its decision, citing concerns about discrimination and retaliation against Plaintiff during the investigations. (*Id.*). The Board of Trustees rejected the FSC's renewed findings, revoked Plaintiff's tenure, terminated his employment on April 9, 2021, denied him severance, and refused to refund lost wages due to a furlough. (ECF No. 1, ¶ 129–30). Plaintiff argues that the Board reversed the FSC's recommendation in reaction to public pressure and media scrutiny. (*Id.*, ¶¶ 126–30).

On April 29, 2021, the parties in Case Two executed a dismissal without prejudice. (Case No. 2:20-cv-4729, ECF No. 17). On May 24, 2021, Plaintiff filed a complaint against OU in the Ohio Court of Claims alleging the same state-law causes of actions alleged here. (ECF No. 13 at 3) (hereinafter "Case Three")). The case has been stayed pending the outcome of this action.

### b. EEOC Filings and Charges

In March 2019, Plaintiff sent a letter to the EEOC's Cleveland Field Office filing a charge of discrimination agains OU for employment discrimination based on "race, gender, national

origin, and retaliation." (ECF No. 23-1 at 1). With the letter, he submitted an EEOC Charge of Discrimination form, that was not dated or signed, but with the boxes marked for discrimination based on race and national origin and retaliation. (*Id.* at 6 (marked as EEOC Case No. 532-2019-01361)). On April 11, 2019, Plaintiff filed another EEOC Charge of Discrimination form in the same case, for the same time period, and making the same allegations. (ECF No. 12-1 at 1). This had a slightly different description of the discrimination but was dated and signed by Plaintiff. (*Id.*). Plaintiff alleges that he requested a right to sue letter on April 29, 2020. (ECF No. 1, ¶¶ 14–15). A right to sue letter was issued by the U.S. Department of Justice's ("DOJ") Civil Rights Division on July 23, 2020. (ECF No. 12-2 at 1).

Plaintiff also alleges that he filed a second EEOC Complaint on April 14, 2021, following his termination, alleging sex, race, and national origin discrimination. (ECF No. 23 at 2; 23-3). In his EEOC letter, Plaintiff included the following allegations: (1) when he attempted to appeal the de-tenure decision, in retaliation, President Nellis undermined the investigations of the complaints Plaintiff had brought against Dean Titsworth and Director Stewart; (2) that the OU Board of Trustees had undermined and disregarded the decision of the FSC to reinstate him; (3) that these actions resulted in a hostile, discriminatory employment action taken against him on the basis of race, national origin, and sex; and (4) the Defendants continue to violate his due process and equal protection rights. (ECF No. 23 at 10). Plaintiff states in his Complaint that he received a right to sue letter from the Ohio Civil Rights Commission on March 10, 2022 (ECF No. 1 at 2).

During all the investigations against him, Plaintiff alleges that OU officials failed to adhere to the mandatory investigation deadlines created by the Faculty Handbook and to protect his identity and the investigations from media scrutiny. (*Id.*, ¶¶ 86, 111). Plaintiff argues that as the only Black faculty member in his field, he was treated worse than other Caucasian professors who

"had been accused of much worse." (*Id.*, ¶¶ 56, 60, 105, 110). Further, Plaintiff maintains that OU has a policy to "accept uncorroborated statements of females to the detriment of non-Caucasian, non-native male, either students or professors," regardless of their truth or falsity. (*Id.*, ¶ 105).

Plaintiff maintains that this ordeal has caused him severe mental and emotional anguish, damaged his professional reputation, and negatively impacted his family. (*Id.*, ¶¶ 53–55). He seeks: (1) an injunction enjoining the University from engaging in discriminatory employment practices, requiring the University to provide equal opportunities for all employees, and reinstating him as a tenured professor; and (2) $75,000 in compensatory damages and back pay.

## II.    STANDARD OF REVIEW

When a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is based on the argument that the complaint fails to state a claim upon which relief may be granted, the Court employs the same legal standard as a Rule 12(b)(6) motion. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987). The Court will grant the Rule 12(c) motion "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (internal quotation marks omitted). The Court must construe "all well-pleaded material allegations of the pleadings of the opposing party . . . as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* at 581 (internal quotation marks omitted). The court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In addition to allegations in the pleadings, the Court may take into account "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (internal quotation marks

omitted). Additionally, the Court "may consider exhibits attached to a motion for judgment on the pleadings 'so long as they are referred to in the Complaint and are central to the claims contained therein.'" *Roe v. Amazon.com*, 170 F. Supp. 3d 1028, 1032 (S.D. Ohio 2016) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).

### III.     LAW & ANALYSIS

### A.  Counts I and III

In Count I, Plaintiff brings a claim for discrimination and denial of equal protection based on race, national origin, and sex in violation of Title VII of the Civil Rights Act of 1964. In Count III, Plaintiff brings a claim for unlawful retaliation in violation of Title VII.

Title VII prohibits an employer from "discriminat[ing] against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A Plaintiff must show that he has suffered an adverse employment action, defined as a "materially adverse" change in the terms or conditions of employment because of the employer's action. *Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir. 2000). Title VII also prohibits an employer from retaliating against an employee because of that individual's exercise of protected conduct. 42 U.S.C. § 2000e-3(a).

#### 1.  Failure to Exhaust Administrative Remedies

##### a.  Parties' Arguments

Defendants argue that Plaintiff has failed to exhaust his administrative remedies with the EEOC for Count I for discrimination and Count III for unlawful retaliation under Title VII. (ECF No. 13 at 4). As such, Defendants maintain that this Court lacks subject matter jurisdiction, pursuant to Rule 12(b)(1). (ECF No. 13 at 3–4). First, Defendant alleges that Plaintiff's failure to indicate he also sought charges for sex discrimination in the EEOC Charge Form is grounds for

dismissal. (*Id.* at 4). Second, Plaintiff's EEOC charge challenges actions prior to March 23, 2019, and did not indicate it was a continuing action. (*Id.* at 5). Because Plaintiff was dismissed from the University on April 9, 2021, almost two years after filing his EEOC charge, a year after he received his right to sue letter, and seven months after filing his Case Two, Defendants argue that Plaintiff's April 19, 2019 charges cannot serve as a basis for an employment action under Title VII because no adverse employment action occurred prior to March 2019. (*Id.*).

Plaintiff responds that he did exhaust his administrative remedies. (ECF No. 23 at 5, 13). Plaintiff provides documentation for the first EEOC charge and provides the second letter he wrote to the EEOC on April 14, 2021, making new allegations against OU and some of its senior officials. (ECF Nos. 22-1; 23-2; 23-3). Plaintiff argues that EEOC exhaustion requirements are satisfied "if the claim can be reasonably expected to grow out of the factual allegations in the EEOC charge." (ECF No. 23 at 11). He asserts that filing an EEOC Charge of discrimination is not a jurisdictional prerequisite to suit but can be waived or subject to estoppel or equitable tolling. (*Id.* at 13). Finally, Plaintiff alleges that retaliation claims are often exceptions to the general administrative exhaustion rules as they often arise after claims for discrimination have been made. (*Id.* at 14).

Defendants reply that Plaintiff's reported 2021 EEOC charge is simply a letter to an EEOC field office that was sent nine months after he received the right to sue letter for his first EEOC complaint in 2020. (ECF No. 24 at 3). Therefore, Defendants argue that Plaintiff failed to file suit within 90 days of receiving his 2020 right to sue letter and cannot claim that subsequent conduct that he raised 300 days later can serve as the basis of for the 2020 right to sue letter. (*Id.*).

### b. Exhaustion Requirements Under Title VII

Prior to filing a Title VII claim in federal court, an employee typically must exhaust administrative remedies with the EEOC. *Younis v. Pinnacle Airlines*, 610 F.3d 359, 361 (6th Cir.

2010). An employment discrimination claim must be filed with the EEOC within 180 days of the alleged unlawful practice. 42 U.S.C. § 2000e-5(e). If the employee first files with a state or local anti-discrimination agency, this period is lengthened to 300 days. *Id.* When a charge of discrimination is filed, the EEOC must investigate the complaint. 41 U.S.C. § 2000e-5(b). If the EEOC determines that the complaint has a reasonable basis to bring the claim, it will issue a right-to-sue-letter to the Plaintiff. *Dickerson v. Associates Home Equity*, 13 Fed. App'x 323, 323–24 (6th Cir. 2001). If the EEOC does not issue a right to sue letter within 180 days, the Plaintiff may request one. *Id.* at 324.

An employee should file an administrative charge with the EEOC which is "'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S.Ct. 13, 17 (2017) (quoting 29 C.F.R. § 1601.12(b)). Generally, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge. 42 U.S.C. § 2000e-5(f)(1); *see also Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974). This rule gives the employer notice concerning the conduct at issue and affords the EEOC and the employer notice and an opportunity to settle the dispute. *Younis*, 610 F.3d at 361. This requirement, however, is "not meant to be overly rigid, nor should it 'result in the restriction of subsequent complaints based on procedural technicalities or the failure of the charges to contain the exact wording which might be required in a judicial pleading.'" *Kilpatrick*, 838 Fed. App'x at 146 (quoting *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006)). Because aggrieved employees, not attorneys, typically file these charges, their *pro se* EEOC complaint should be liberally construed to encompass all claims "reasonably expected to grow out of the charge of discrimination." *Randolph*, 453 F.3d at 732. Therefore, where the "facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged

10

claim, the plaintiff is not precluded from bringing suit on that claim." *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998).

Administrative exhaustion, however, is not a jurisdictional requirement under Title VII, but a "mandatory claim-processing rule, subject to waiver or forfeiture if not properly raised." *Kilpatrick v. HCA Human Resources, LLC*, 838 Fed. App'x 142, 145–46 (6th Cir. 2020) (citing *George v. Youngstown State Univ.*, 966 F.3d 446, 469 (6th Cir. 2020)). Defendants can forfeit the defense if they fail to raise it in a timely manner or the parties can agree to waive the Plaintiff's requirement to obtain a right to sue letter. *George*, 966 F.3d at 469.

### c. Discrimination and Retaliation Claims

On April 14, 2021, Plaintiff sent a letter notifying the EEOC Cleveland Field Office that through the letter, he was filing a charge of employment retaliation and employment discrimination on the basis of race, national origin, and sex against OU following his de-tenure and termination. This was five days after he was terminated from OU, and easily meets the timeliness requirement. Additionally, the EEOC has entered into a work-share agreement with the OCRC, allowing it to receive and resolve charges of discrimination on behalf of the EEOC. 29 C.F.R. § 1626.10. Therefore, when a plaintiff receives a right-to-sue letter from the OCRC, he will satisfy the condition precedent to file an action in federal court. *Kendel v. Local 17-A United Workers & Com. Workers*, No. 5:19-cv-1111, 2010 WL 3937359 at *2 (N.D. Ohio Oct. 6, 2010). Plaintiff received a right-to-sue letter from the OCRC on March 10, 2022. (ECF No. 1 at 2). It appears that Plaintiff's April 2021 EEOC charge was received and assessed by the OCRC, which provided Plaintiff with the right-to-sue letter necessary to file this action in April 2022.

In his April 14, 2021 EEOC charging letter, Plaintiff detailed that he was discriminated and retaliated against on the basis of race, national origin, and sex, and that OU continued to violate

his rights to due process and equal protection under these laws when it de-tenured and terminated him. (ECF No. 23-3 at 3–4). This Court need not assess whether Plaintiff's claims grew out of his 2019 EEOC charge because Plaintiff filed a separate EEOC charge following his de-tenure and termination (ECF No. 23-3) and received a right-to-sue letter from the OCRC for that claim. (ECF No. 1 at 2). Additionally, those filings outlined the claims brought in this action and described that harm as continuing. Therefore, Plaintiff satisfies Title VII's exhaustion requirements for all claims.

### 1. Failure to State a Claim

#### a. Parties' Arguments

Defendants also argue that because Defendant filed the EEOC Charge for the period of September 23, 2018 to March 23, 2019 and before he was terminated from OU, he essentially challenges the recommendation by his peers that he be dismissed and OU's decision to place him on paid leave. (ECF No. 13 at 5). The Defendants argue that these are not "materially adverse employment action[s]" under Sixth Circuit precedent. (*Id.* at 6; 24 at 2). Additionally, Defendants assert that even if Plaintiff's Title VII claims were not barred, their dismissal is still appropriate. (*Id.*). They state that Plaintiff's pleadings are "severely lacking," because Plaintiff only makes conclusory statements that the investigations and termination decisions were flawed, but without specific detail. (*Id.* at 6–7). Finally, Defendants allege that Plaintiffs' retaliation claim has no basis because OU was required to investigate the complaints made against him, which do not constitute adverse employment actions. Therefore, Defendants argue that Counts I and III for discrimination and retaliation should be dismissed with prejudice.

Plaintiff responds that his Complaint and the second EEOC filing set forth the violations against Plaintiff "in exhaustive detail." (ECF No. 23 at 5, 8–10, 15). Plaintiff argues that he was mistreated and not given due process because the University was motivated by malice, racial

prejudice, and backlash from the "#MeToo" movement. (*Id.* at 15–16). Plaintiff implores this Court to consider both EEOC charges, because together they gave the University sufficient notice of the alleged wrongdoing. (*Id.* at 10). Defendants reply that Plaintiff's failure to respond directly to their allegations that Plaintiff did not properly plead discrimination and retaliation because he lacks evidence of animus. (ECF No. 24 at 5).

### b. Race and National Origin Discrimination

A plaintiff must first demonstrate that she suffered an adverse employment action to bring a Title VII claim. An "adverse employment action" is an action by an employer that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Industries v. Ellerth*, 524 U.S. 742, 761 (1998); *see also Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885–86 (6th Cir. 1996) (An adverse employment action typically constitutes "a materially adverse change in the terms of employment," such as "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation."); *Dawson v. Airtouch Cellular,* 42 F.Supp.2d 767, 771 (S.D. Ohio 1999) (Marbley, J.) (granting summary judgment for the defendant where plaintiff had not alleged that she lost any salary, seniority or benefits, nor received a less distinguished title or fewer responsibilities as a result of alleged discriminatory remarks); *Joiner v. Ohio Dep't of Transp.,* 949 F.Supp. 562, 567 (S.D. Ohio 1996) (no adverse employment action, despite loss of overtime and supervisory responsibilities, because no change in pay or benefits and no other conditions existed which would make working conditions intolerable).

There is no question that Plaintiff suffered an adverse employment action when he was terminated from his tenured professorship in April 2021. While Plaintiff spends a large portion of the Complaint rehashing the details of the investigations prior to the April 2019 EEOC complaint, he also details the de-tenure and termination process. Therefore, his Complaint is not predicated on solely the April 11, 2019 EEOC charge, as asserted by Defendants. While neither an "internal investigation into suspected wrongdoing by an employee nor that employee's placement on paid administrative leave pending the outcome of such an investigation constitutes an adverse employment, *see Dendinger v. Ohio*, 207 Fed. App'x 521, 527 (6th Cir. 2006), the events leading up to his termination all constitute evidence Plaintiff uses to allege his current claims.

A plaintiff may satisfy the burden of establishing a *prima facie* case of discrimination by presenting direct evidence of discriminatory actions. Direct evidence is "evidence which, if believed, requires no inferences to conclude that unlawful retaliation was a motivating factor in the employer's action." *Imwalle v. Reliance Med. Products, Inc.*, 515 F.3d 531, 543–44 (6th Cir. 2008). Plaintiff fails to plead direct evidence of discrimination as a motivating factor in the adverse employment decision. *See e.g., Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 650 (6th Cir. 2012) (concluding that a reasonable jury could find that race was a motivating factor in a company's decision to terminate an employee when prior to firing the plaintiff, her supervisor stated "how [could he] keep the white girl."); *Taylor v. Bd. of Ed. of Memphis City Schs.*, 240 Fed. App'x 717, 720 (6th Cir. 2007) (statement that another applicant was hired to "maintain racial balance" plainly indicated unlawful discrimination may have been a motivating factor in the hiring decision). Plaintiff pleads that his race, national origin, and sex were unlawful factors taken into consideration by OU prior to his termination, but he provides no explicit evidence from either defendants' statements or writings that support a conclusion of direct discrimination.

A party can also prove discrimination through circumstantial evidence, but the plaintiff bears the initial "not onerous" burden of establishing a *prima facie* case of discrimination by preponderance of the evidence. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008). To establish a *prima facie* claim of indirect, employment discrimination, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) that he suffered an adverse employment action; (3) that he was qualified for the position; and (4) that a similarly situated employee outside the protected class or classes was treated more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). In a disciplinary context, to be "deemed 'similarly situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hospital,* 964 F.2d 577, 583 (6th Cir. 1992).

A plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment, but that they are similarly situated in all *relevant* aspects. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (finding that three, older, human resources employees' positions were similarly situated, even though they had different job responsibilities, where their positions were all eliminated by a company reorganization and younger employees, not the older employees, had been offered the opportunity to transfer jobs) (emphasis added). To determine whether the plaintiff and the non-protected party committed the same conduct, but plaintiff's disciplinary action was motivated by discriminatory animus, courts look to the "comparable seriousness" of their actions. *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 778 (6th Cir. 2016).

Once the Plaintiff makes this showing, the burden of production shifts to the defendant to provide a legitimate, nondiscriminatory reason for its actions. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). Once the defendant meets its burden, the burden shifts back to the plaintiff to demonstrate pretext, that is, that the employer's reasoning was "fabricated to conceal an illegal motive." *Id.* A plaintiff demonstrates pretext where defendant's nondiscriminatory reason for defendant's action "(1) had no basis in fact, (2) did not actually motivate defendant's conduct, or (3) was insufficient to warrant the challenged conduct." *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 258 (6th Cir. 2002).

An individual's national origin is defined as "the country where a person was born, or, more broadly, the country from which his or her ancestor's came." *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88 (1973). An individual's race is defined as having "personal attributes in common." *Kostic v. United Parcel Service, Inc.*, 532 F.Supp.3d 513, 523 (M.D. Tenn. 2021). There is often overlap between the two types of discrimination, and here, Plaintiff appears to plead the issue of race and national origin together. *See Burrage v. FedEx Freight, Inc.*, No. 4:10-cv-2755, 2012 WL 1068794, at *8 (N.D. Ohio Mar. 29, 2012). That said, they are not so intertwined as to prevent separate analysis.

The parties do not dispute that Plaintiff is a member of a protected class and qualified for his position. As established *supra*, Plaintiff suffered an adverse employment action when he was de-tenured and terminated. Therefore, this Court focuses on the fourth factor required to establish a *prima facie* claim of indirect discrimination: that a similarly situated employee outside the protected class or classes was treated more favorably. *McDonnell Douglas Corp.*, 411 U.S. at 802. Plaintiff alleges that there were at least three, American-born, Caucasian professors who were "accused of, found liable for, and/or charged criminally for conduct far [more] egregious than that"

of which Plaintiff was accused, but were only sanctioned with training and/or limited suspension. (ECF No. 1, ¶ 105). He further alleged that at least two minority OU professors "had been de-tenured, terminated, or otherwise forced out of their employment" for conduct similar to or less egregious than their American-born, Caucasian peers. (*Id.*). Plaintiff asserted that OU protected the identity of one of the accused white, male professors, but did not provide the same protection to Plaintiff. (*Id.*, ¶ 110).

Although Plaintiff does not address whether he and these professors had the same supervisor, the Sixth Circuit has held that the "shared supervisor" requirement is flexible. *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 479–80 (6th Cir. 2003) (finding that two individuals with different supervisors were still similarly situated because all of the people involved in the disciplinary decision-making process were aware of the discipline "meted out to past [policy] violators."). What is important here, is whether both Plaintiff and the other disciplined professors dealt with the same ultimate-decisionmaker. *McMillan v. Castro*, 405 F.3d 405, 414 (6th Cir. 2005). The ultimate decisionmakers cannot be the same here because Plaintiff was recommended for de-tenure and was terminated, but his American-born, Caucasian peers were sanctioned with training, and therefore, did not have to be reviewed by the FSC or Board of Trustees. Plaintiff alleges, however, that UPEC reviewed these other professors, like him—meeting prong one.

Plaintiff pleads that the Faculty Handbook and ethical code within was applicable to all professors brought before the UPEC, yet UPEC, the FSC, and the Board of Trustees failed to follow the hearing procedures set out in that handbook for these types of investigations. (ECF No. 1, ¶ 136). Plaintiff argues that OU was "taken by the "me too" hysteria" and in the process stripped him of his constitutional rights. (ECF No. 23 at 15–16). Even taking these allegations as true, Plaintiff's claim still fails to meet the prima facie requirements. Plaintiff fails to plead any facts

17

about the nature of the conduct of the non-protected individuals. While Plaintiff states that OU had a policy of accepting "uncorroborated statements of females" and that these professors were "accused of much more egregious and grave conduct," he does not state what kind of conduct they committed or if these individuals were even accused of sexual harassment like Plaintiff. (*Id.*, ¶ 105). Even assuming arguendo that the non-protected professors were accused of sexual harassment, Plaintiff's conclusory statements that they were accused of more egregious conduct than he provides this Court insufficient information. This Court is not required to accept as true mere legal conclusions unsupported by factual allegations, *see Ashcroft*, 556 U.S. at 678, as legal conclusions do not demonstrate to this Court how Plaintiff's conduct and the conduct of the non-protected class was of comparable seriousness, and therefore, should have been disciplined the same. Because Plaintiff fails to meet the pleading requirements, even under the low burden required at this stage. Defendants' Motion for Judgment on the Pleadings is **GRANTED** will respect to Plaintiff's claims for racial and national origin discrimination, which are **DISMISSED WITHOUT PREJUDICE**.

### c. Sex Discrimination and Res Judicata

Defendants argue that Plaintiff's reverse sex discrimination claim is also barred by res judicata, because he brought an identical claim as a cross claim against the University in Case One, which was dismissed for failure to state a claim. (ECF No. 13 at 7–8; *see* Case No. 2:19-cv-0201, ECF No. 58 at 8). Therefore, the Defendants argue that this issue cannot be relitigated. (*Id.* at 8).

Plaintiff maintains that the female complainants were afforded more protections than he during the investigations. (ECF No. 23 at 17–18). He argues that the claims made by the female complainants were taken at face value without corroborating evidence, unlike his responses and those of his other male counterparts. (*Id.* at 18). Further, he alleges that he has met the pleading

requirements for a sex discrimination claim with direct evidence that OU discriminates against men. (*Id.*). Finally, Plaintiff argues that all of his Title VII claims are not precluded by previous litigation because the Eleventh Amendment bar does not apply to his sex, gender, and racial discrimination claims. (*Id.* at 19).

Defendants reply that Plaintiff undermines his own argument, because the face of his Amended Complaint details the more than two years of procedures and protections Plaintiff received from OU prior to his dismissal. (ECF No. 24 at 4). Further, Defendants maintain that he fails to allege with any detail that his accusers received more process than he. (*Id.*). Because there is no direct evidence of sex discrimination, Defendants argue that Plaintiff's claim for reverse sex discrimination should be dismissed with prejudice.

The Sixth Circuit has set out the principles governing res judicata, or claim preclusion:

> The doctrine of res judicata, or claim preclusion, provides that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in a prior action. As stated by this court, res judicata has four elements: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*Rivers v. Baberton Bd. of Educ.*, 143 F.3d 1029, 1031 (6th Cir. 1998) (internal citations omitted). It is well-established that a prior dismissal for failure to state a claim upon which relief may be granted, operates as an adjudication on the merits. *Cobbs v. Katona*, 8 Fed. App'x 437, 439 (6th Cir. 2001). The theory of continuing violation, however, bars res judicata from extinguishing claims that did not exist when the previous suit was brought. *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 327–28 (1955). Elaborating on this precedent, the Sixth Circuit reasoned that a plaintiff should not be barred from asserting "new claims based on continuous wrongful conduct, even if that conduct is identical to the subject of a prior suit." *Pram Bguyen ex rel. United States*

*v. City of Cleveland*, 534 Fed. App'x 445, 451 (6th Cir. 2013) (citing Res. 2d of Judgments Sec. 24(1)). Plaintiff's sex discrimination claim was dismissed in Case One on November 22, 2019. (Case No. 2:19-cv-0201; ECF No. 58). Plaintiff was not de-tenured and terminated until April 2021—the main adverse employment action for which Plaintiff brings suit. For this reason alone, the doctrine of res judicata does not apply to Plaintiff's sex discrimination claim.

Plaintiff's reverse sex discrimination claim, however, fails for other reasons. To establish a prima facie case of sex discrimination under Title VII, a plaintiff must show that: (1) he is a member of a protected class; (2) he is qualified for the job; (3) he experienced an adverse employment action; and (4) he was replaced by someone outside of the protected class. *Arendale*, 519 F.3d at 603. Because Plaintiff is male, the first and fourth prongs are modified. To satisfy the first prong, Plaintiff must also prove background circumstances that make OU the "unusual employer who discriminates against the majority." *Simpson v. Vanderbilt Univ.*, 359 Fed. App'x 562, 569 (6th Cir. 2009). To satisfy the fourth prong, Plaintiff must demonstrate that OU "treated differently employees who were similarly situated but were not members of the protected class." *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003); *Simpson v. Vanderbilt Univ.*, 359 Fed. App'x 562, 569 (6th Cir. 2009) (male nurse failed to plead a prima facie case of reverse sex discrimination where he provided insufficient evidence that a female nurse who was not terminated engaged in acts of "comparable seriousness.").

Plaintiff states that OU is the unusual employer who discriminates against men by believing females over males but does not provide any specific examples. Assuming arguendo that Plaintiff's pleadings were sufficient to meet the first prong, Plaintiff still fails on the fourth prong. Plaintiff alleges that OU had a policy to "accept uncorroborated statements of females" to the detriment of "non-Caucasian, non-native male, either students or professors." (ECF No. 1, ¶ 105). These

references are made, however, to the female students who brought harassment complaints against Plaintiff and other OU employees, not other female, tenured professors. At most, Plaintiff makes generic statements that where subjects of internal investigations were female or female professors and more serious conduct was at issue, females were given preferential treatment. (*Id.*; 23 at 18). The record is devoid of any detail regarding how these supposed female professors were treated differently, other than a conclusory statement that they were treated differently. *Wilson v. Ohio*, 178 Fed. App'x 457, 466 (6th Cir. 2006) (male plaintiff failed to establish prima facie case of reverse discrimination where he argued that his work was taken over by women, but provided no evidence that male employees were statistically disfavored or treated differently than their female counterparts). Therefore, Defendants' Motion for Judgment on the Pleadings is **GRANTED** with respect to Plaintiff's sex discrimination claim under Title VII, and this claim is **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

### d. Retaliation

Plaintiff claims that he was retaliated against for launching investigations for discrimination and retaliation against OU faculty and staff and his filing Case Two. A prima facie case of retaliation requires Plaintiff to establish that: (1) he engaged in activity protected by Title VII; (2) exercising his civil rights was known to Defendants; (3) Defendants took an adverse employment action against Plaintiff; and (4) the protected activity and adverse employment action were causally connected. *Arendale v. City of Memphis*, 519 F.3d 587, 606 (6th Cir. 2008).

### 1. Protected activity

A plaintiff may satisfy the pleading requirement for protected activity by "alleging conduct that falls within one of two clauses in the statute, which says it is an:

> unlawful employment practice for an employer to discriminate against any of his employees ... [1] because [the employee] has opposed any practice made an

> unlawful employment practice by this subchapter, or [2] because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

*Hamade v. Valiant Gov't Servs., LLC*, 807 F. App'x 546, 549 (6th Cir. 2020) (quoting 42 U.S.C. § 2000e–3(a)).  Accordingly, "[t]he first clause is known as the "opposition clause," and the second as the "participation clause." *Id.* The "Supreme Court has held that the term "oppose" should be interpreted based on its ordinary meaning: "[t]o resist or antagonize . . . ; to contend against; to confront; resist; withstand." *Jackson v. Genesee Cty. Rd. Comm'n*, 999 F.3d 333, 344 (6th Cir. 2021) (citing *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009)). Additionally, "[e]xamples of opposition activity protected under Title VII include complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices; [and] refusing to obey an order because the worker thinks it is unlawful under Title VII." *Id.* (citing *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 721 (6th Cir. 2008) (internal quotations omitted)). The opposition clause protects not only the filing of formal discrimination charges with the EEOC, but also complaints to management and less formal protests of discriminatory employment practices. *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014).

The plaintiff also must express her opposition in a reasonable manner. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 580 (6th Cir. 2000). For example, "[a]n employee is not protected when he violates legitimate rules and orders of his employer, disrupts the employment environment, or interferes with the attainment of his employer's goals." *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1312 (6th Cir. 1989). Finally, the plaintiff himself must have a "reasonable and good faith belief that the opposed practices were unlawful." *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 345 (6th Cir. 2021) (quoting *EEOC Compliance Manual,* (CCH) ¶ 8006); *see also Keys v. U.S. Welding, Fabricating & Mfg., Inc.,* No. CV91–0113, 1992 WL

218302, at *5 (N.D. Ohio Aug. 26, 1992) (noting that "[u]nder § 704(a) of Title VII, [the plaintiff] needed only a 'good faith belief' that the company practice about which he was complaining violated Title VII; it is irrelevant whether the allegations are ultimately determined to violate Title VII").

Plaintiff alleges multiple actions that meet the opposition clause definition of protected activity under Title VII: (1) lobbying Director Stewart to intervene in Professor Sweeney's alleged discriminatory admissions practices; (2) filing an EEOC complaint in April 2019 alleging retaliation and race, national origin, and sex discrimination; and (3) filing multiple internal complaints against Stewart, Titsworth, and Sayrs for race and national origin discrimination after they removed him from the classroom prior to the UPEC review. While Plaintiff expressed disdain for the sanctions levied against him, there are no allegations that he violated orders from his employer following the sanctions. Because Plaintiff denied the harassment allegations against him, Plaintiff has sufficiently pleaded a reasonable belief that the investigations, sanctions, and ultimate termination of his position were motivated by discriminatory animus in retaliation for him raising employment discrimination concerns both internally to OU and externally with the EEOC.

### 2. *Exercising civil rights and adverse employment action*

Plaintiff meets the second and third prongs required to establish a *prima facie* case for retaliation under Title VII. Plaintiff reasonably believed that the investigations against him, the process by which he was recommended for de-tenure, and his subsequent termination were conducted in an unlawful manner. Defendants were aware of Plaintiff's opposition through his first EEOC complaint and Plaintiff's participation in two federal lawsuits.

### 3.   Causal connection

Finally, the fourth part of the test requires "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360–62 (2013). A plaintiff must show that their "protected activity was a but-for cause of the alleged adverse action by the employer." *Id.* at 352. A causal link may be shown through knowledge combined with closeness in time that creates an inference of causation. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 582 (6th Cir. 2000). Although temporal proximity, alone, will not support an inference of discriminatory retaliation, closeness in time between the EEOC filing and the adverse employment action is relevant to evincing the employer's intent. *Id.* at 582–83; *see also Cooper v. City of North Olmsted*, 795 F.2d 1265, 1272–73 (6th Cir. 1986) ("The mere fact that [the plaintiff] was discharged four months after filing a discrimination claim is insufficient to support an inference of retaliation."). Where time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must "couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). An intervening "legitimate reasons to discipline . . . dispels an inference of retaliation based on temporal proximity." *Waske v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 472 (6th Cir. 2012) (finding that the legitimate reasons was that plaintiff left the job site without permission after making a complaint of sexual touching to a supervisor).

Even though the EEOC complaint that was related directly to Plaintiff's termination was filed after his termination in April 2021, Plaintiff alleges sufficient evidence to establish a causal connection for purposes of retaliation. Plaintiff took action in response to what he alleges were unlawful internal investigations against him as far back as March of 2019 when he filed cross

claims against OU in Case One. More than a year later, in September 2020, Plaintiff filed his own action against OU alleging discrimination. During the same time period that Plaintiff filed federal litigation and internal complaints against OU staff who were involved in the de-tenuring process, the internal investigations into the harassment claims against him progressed and culminated in termination. From the beginning of the investigations into Plaintiff, he alleges that the investigators disregarded the evidence he presented to counter the harassment claims and flouted the investigatory procedures laid out in the Faculty Handbook. Additionally, the decision to place him on paid, administrative function does not constitute an intervening legitimate reason to dispel the inference of retaliation, because Plaintiff took no wrongful action for which he was disciplined in between the beginning of the investigations and his termination. Even though more than two years passed from the beginning of the investigations to termination, Plaintiff alleges that the process of de-tenure and termination was replete with wrongful conduct because he challenged OU's conduct, which robbed him of due process. Taking as true Plaintiff's allegations, as required at this stage of the litigation, he plausibly pleads a *prima facie* case of retaliation.

Therefore, Defendants' Motion for Judgment on the Pleadings for Plaintiff's retaliation claim under Title VII is **DENIED**.

### B.  Count II

In Count II, Plaintiff brings a claim against Defendants for denial of equal contract rights in violation of 42 U.S.C. § 1981 due to Plaintiff's race and in retaliation for engaging in protected activity. First, Defendants argue that Count II is barred by res judicata and the Eleventh Amendment. (ECF No. 13 at 8). Defendants allege that Plaintiff brought an identical claim in Case One, which was dismissed by this Court as being barred by the Eleventh Amendment. (*Id.*; *see Herman*, Case No. 2:10-cv-0201, ECF No. 58 at 4 (Morrison, J.)). Second, Defendants argue that

25

even if Plaintiff's claim was not precluded, a § 1981 claim cannot be brought against state actors. (*Id.* at 9). Finally, Defendants allege that Plaintiff's Complaint "sounds in breach of contract, not intentional discrimination," therefore, it does not meet the pleading requirements of § 1981 which require well-pled facts of intentional race-based discrimination. (*Id.*).

Plaintiff responds that the facts have evolved since he initially asserted this claim because he was actually terminated by OU in the interim. (ECF No. 23 at 19). Because his previous § 1981 claim pre-date his termination, Plaintiff argues that his current § 1981 claim should be considered in the context of the facts that he was de-tenured and terminated from his position. (*Id.* at 20).

Section 1981 prohibits discrimination in "the making, performance, modification, and termination of contracts." 42 U.S.C. § 1981. The elements of a prima facie case are the same for those in a Title VII action, but the plaintiff must demonstrate purposeful discrimination in a § 1981 suit by a preponderance of the evidence. *General Building Contractor's Assoc, Inc. v. Pennsylvania*, 458 U.S. 375, 390 (1982). A prima facie case raises an inference of discrimination "only because we presume [the defendant's] acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 870 (6th Cir. 2001) (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

Plaintiff's claim fails, however, even before this Court assesses the merits of the claim. First, as discussed *supra*, res judicata is inapplicable where the continuing violation doctrine applies. Second, § 1981's implicit cause of action does not extend to suits brought against state actors in their official capacities. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 709 (1989). Further, in 2012, the Sixth Circuit held that 42 U.S.C. § 1983 is the exclusive mechanism to vindicate violations of § 1981 by an individual state actor acting in his individual capacity. *McCormick v.*

*Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012). It clarified, however, that Plaintiffs may bring actions under § 1981 against private actors. *Id.* at FN 3. That is not the case here. Plaintiff's claims against individual OU employees allege misconduct as it relates to their status as employees of a state university. Additionally, the Eleventh Amendment bars claims against OU under § 1981 because it is a public university in the state of Ohio. *See* Ohio Rev. Code § 3339. Since a public university qualifies as an arm of the state, *see Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2012), OU "is immune from suit under the Eleventh Amendment because it is well-settled that a plaintiff is precluded from directly suing a State in federal Court." *Id.* Therefore, Defendant's Motion for Judgment on the Pleadings is **GRANTED** with regards to Plaintiff's § 1981 claim, which is **DISMISSED WITH PREJUDICE**.

### C. Counts IV–XVI

Counts IV–XVI set forth claims under Ohio law for discrimination, retaliation, breach of contract, breach of administrative policies, and public policy violations. These claims are currently pending before the Ohio Court of Claims in the Case Three. (ECF No. 13 at 9). Defendants argue that these claims should be dismissed because Ohio has not waived its Eleventh Amendment immunity from suit in federal court in connections with claims under Ohio law. (*Id.*). Plaintiff does not respond to this argument.

The Eleventh Amendment to the United States Constitution states:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. It is well settled that the Eleventh Amendment applies not only to suits brought against a State by a citizen of "another State," but also to suits brought by citizens against the State in which he or she resides. *See generally Hans v. Louisiana*, 134 U.S. 1 (1890). The

Eleventh Amendment, as interpreted by the Supreme Court, bars an action against a State in federal court, unless Congress has abrogated its sovereign immunity or the State has expressly waived it. *Virginia Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 253–54 (2011). The same immunity applies to an instrumentality of the state, such as a state official sued in his or her official capacity. *Regents of the University of California v. Doe*, 519 U.S. 425, 429 (1997); *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005). Suits for money damages against state officials in their official capacity are considered to be suits against the state itself. *Will v. Michigan Dept. of State* Police, 491 U.S. 58, 71 (1989).

Plaintiff does not expressly state whether he seeks to hold these parties liable in their official or individual capacities, but it is appropriate to presume that these officials are sued in their official capacities given the nature of Title VII. *Johnson v. University of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2000) (citing *Wathen v. General Electric Co.*, 115 F.3d 400, 405 (6th Cir. 1997) ("[A]n individual employee/supervisor who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII.")); *cf. Hill v. Michigan*, 62 Fed. App'x 114, 114 (6th Cir. 2003) (holding that where a plaintiff's 42 U.S.C § 1983 complaint fails to indicate whether they seek to hold the defendants liable in their official or individual capacities, it is appropriate to presume that the officials are being sued in their official capacities).

The state of Ohio has not waived its immunity from suit in federal court, except to the extent that such claims are allowed to be brought in the Court of Claims of Ohio. OHIO REV. CODE § 2743.02(A)(1) ("The state hereby waives its immunity from liability . . . and consents to be sued, and have its liability determined, in the court of claims created in this chapter in accordance with the same rules of law applicable to suits between private parties . . . ."); *see also Jones v. Hamilton Cty. Sheriff*, 838 F.3d 782, 786 (6th Cir. 2016) (holding that OHIO REV. CODE § 2743.02(A)(1)

"confirms that Ohio has not consented to state law damages actions against the State of Ohio . . . outside its own courts"); *Bialczak v. Ohio Dep't of Taxation*, Case No. 99-3841, 2000 WL 1888789, at *2 (6th Cir. Dec. 22, 2000) ("Ohio Revised Code § 4112.99 authorizes suit against the State of Ohio as an employer in its Court of Claims, but the statute does not waive the State's Eleventh Amendment immunity from suit in federal court."); *Robertson v. Rosol,* Nos. 2:06–cv–1087, 2:06–cv–1088, 2007 WL 2123764, at *4 (S.D. Ohio July 20, 2007) ("It is a clear point of law that the State of Ohio has not consented to suit in federal court by enacting Ohio Rev.Code § 4112 *et seq.*") *Herman v. Ohio Univ*. Case No. 2:19-cv-201, 2019 WL 6255719, at *3 (S.D. Ohio Nov. 22, 2019) (same). Because Ohio law does not waive the state's Eleventh Amendment immunity from suit in federal court, this Court lacks subject-matter jurisdiction over Plaintiff's state-law claims.

Unlike Plaintiff's state law claims, Title VII claims are permissible against the University and University employees in their official capacities not withstanding the Eleventh Amendment. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976) (holding that Congress abrogated the States' sovereign immunity by enacting Title VII under the Enforcement clause, § 5, of the Fourteenth Amendment). Therefore, this Court **GRANTS** Defendants' Motion with respect to Counts IV– XVI, which are **DISMISSED WITHOUT PREJUDICE**.

### D.  Ohio University Board of Trustees

Finally, Defendants argue that Plaintiff cannot join OU's Board of Trustees as a defendant because they are agents of the University and not a *sui juris* or suable entity. (ECF No. 13 at 10). Even if the Board of Trustees was a legally independent entity, the Defendants allege that it would still not be a suable because it is not the employer of record, this Court lacks jurisdiction over the state law claims against it per the Eleventh Amendment, and Plaintiff has failed to plead well-pled

allegations against the Board of Trustees. (*Id.* at 10–11). Plaintiff does not respond to Defendants' arguments that the OU Board of Trustees is not a suable entity. (ECF No. 24 at 1).

The OU Board of Trustees is composed of eleven members who are appointed by the Governor, with the advice and consent of the senate, and serve without compensation. OHIO REV. CODE § 3337.01. The Ohio Revised Code states:

> Notwithstanding any other provision of law, a member of a board of trustees of an institution of higher education, as defined in section 3345.12 of the Revised Code, is not liable in damages in a civil action for injury, death, or loss to person or property that allegedly is caused by an expenditure made or a contract entered into by the institution of higher education unless the trustee acted with malicious purpose, in bad faith, or in a wanton or reckless manner with respect to the expenditure or contract.

OHIO REV. CODE § 3345.122. Further, the term "State" includes all boards and universities of the state of Ohio. OHIO REV. CODE § 2744.01(G)(2)(I). Together, these statutes instruct that as both individuals and as a board, the OU Board of Trustees cannot be held liable in damages in a civil action under Ohio law and the Eleventh Amendment. That said, the OU Board of Trustees is considered an entity of the state. As previously outlined, Title VII claims are permissible in federal court against the state notwithstanding the Eleventh Amendment, as Congress abrogated the States' sovereign immunity by enacting Title VII under the Enforcement Clause of the Fourteenth Amendment. *Johnson*, 215 F.3d at 571. Absent state law or regulation to the contrary, the OU Board of Trustees is an entity of the State which can be sued under Title VII.

## IV. CONCLUSION

For the reason stated above, Defendants' Motion for Judgment on the Pleadings is **GRANTED in part and DENIED in part.**

- Defendant's Motion for Judgment on the Pleadings is **GRANTED** in regard to the following claims which are **DISMISSED WITHOUT PREJUDICE**: (1) Count I for race,

national origin, and sex discrimination under Title VII; and (2) Counts IV–XVI under Ohio law for discrimination, retaliation, breach of contract, breach of administrative policies, and public policy violations.

- Defendant's Motion for Judgment on the Pleadings is **GRANTED** in regards to Count II under § 1981 which is **DISMISSED WITH PREJUDICE**.

- Defendant's Motion for Judgment on the Pleadings is **DENIED** in regard to Count III for retaliation under Title VII. Count III may **PROCEED**.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: March 14, 2023**