UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **YUSUF KALYANGO, Ph.D.,** | : | |
| | : | |
| Plaintiff, | : | Case No. 2:22-cv-2028 |
| | : | |
| v. | : | Chief Judge Algenon L. Marbley |
| | : | |
| **OHIO UNIVERSITY,** *et al.*, | : | Magistrate Judge Elizabeth P. Deavers |
| | : | |
| Defendants. | : | |

**OPINION & ORDER**

This matter is before this Court on Defendants' Motion for Summary Judgment. (ECF No. 32). Dr. Yusuf Kalyango, Ph.D., brought suit against Ohio University for discrimination, retaliation, breach of contract, breach of administrative policies, and public policy violations. The only surviving claim, evaluated here, is for retaliation. For the reasons stated below, Defendant's Motion is **DENIED**.

## I. FACTUAL BACKGROUND

### A. Ohio University Investigations and Termination

On April 24, 2022, Plaintiff, Dr. Yusuf Kalyango, Ph.D., brought this action against Defendants: (1) Ohio University ("OU"); (2) the OU Board of Trustees; (3) M. Duane Nellis, President of OU; (4) Chaden Djalali, Executive Vice President and Provost of OU; (5) Brian Scott Titsworth, Dean of OU's Scripps College of Communication; (6) Robert K. Stewart, Director of OU's E.W. Scripps School of Journalism; (7) George Antonio Anaya, Civil Rights Investigator in OU's Office for Equity and Civil Rights Compliance; (8) Sarah L. Trower, Executive Director of OU Office of Civil Rights Compliance and Title IX Coordinator; and (9) Michal S. Sweeney, tenured professor of journalism history at OU. (ECF No. 1). Plaintiff alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-1, *et seq.*, the Civil Rights Act of 1991, 42

U.S.C. § 1981, as amended; and the Ohio Civil Rights Act, Ohio Revised Code Chapter 4112.01, *et. seq.* (ECF No. 1 at 2).

Plaintiff was a tenured professor of journalism, media, and broadcast news. (ECF No. 1 at 5-8). He also supervised Ph.D. candidates and oversaw study abroad programs at OU's College of Journalism. (*Id.*). In February 2017, Tess Herman, a female graduate student who worked for Plaintiff on a study abroad program, made a Title IX sexual and workplace harassment complaint against him. (*Id.* at 8-10). In July 2017, George Anaya, the Civil Rights Investigator in OU's Office for Equity and Civil Rights Compliance ("ECRC"), began an investigation into the accusations. (*Id.* at 11). Plaintiff not only denied the Ms. Herman's accusations but argues that OU's Human Resources office helped the student fabricate the complaint and that Mr. Anaya conducted a flawed, results-oriented investigation that lacked proper protocol. (*Id.* at 11-12). Plaintiff alleges that Ms. Herman produced no evidence of her allegations, and that Mr. Anaya disregarded several key witnesses Plaintiff presented to him to corroborate Plaintiff's side of the story. (*Id.* at 12). Additionally, in February 2018, Ms. Herman filed a retaliation complaint against Plaintiff on behalf of another individual who was not admitted into the School of Communication's doctoral program because that individual had been a witness to Ms. Herman's initial complaint against Plaintiff. (*Id.* at 18). Plaintiff also denied these claims.

On August 24, 2018, Mr. Anaya produced a report detailing the harassment claim and his findings, which Plaintiff maintains was the result of discriminatory animus because Plaintiff is a Black male of Ugandan descent. (*Id.* at 12-13). As a result of Mr. Anaya's report, Plaintiff alleges the Dean of the College of Communications, Brian Titsworth, and the School Director, Robert Stewart, suspended Plaintiff from teaching, reassigned him to administration of external grant applications and other activities, and banned him from representing the university at academic

2

conferences, in what Plaintiff refers to as the "administrative de-tenuring process." (*Id.* at 14, 17). Plaintiff argues that their decision was premature and was in retaliation for Plaintiff previously complaining to Director Stewart that Professor and Chair of the graduate admissions committee, Michael S. Sweeney, favored white, American students for admission over minority international students. (*Id.* at 16-17).

In January 2019, Ms. Herman sued both Plaintiff and the University, alleging that Plaintiff had sexually harassed her and that the University had been deliberately indifferent to the harassment. (ECF No. 13 at 2). Between March and April 2019, Plaintiff filed cross and third-party claims in the proceedings against OU, Mr. Anaya, Ms. Trower, Mr. Djalali, and other senior university officials asserting violation of due process and discrimination under Title IX. (ECF No. 1 at 19; *see Tess Herman v. Ohio University & Yusuf Kalyango*, No. 2:19-cv-00201 (S.D. Ohio 2019) (these claims were subsequently dismissed)). Ultimately, the Plaintiff and OU reached resolution with the student, and that case was terminated on June 2, 2020. (ECF No. 13 at 2).

Plaintiff argues that in retaliation for filing civil litigation and for failing to admit the student who was the subject of the second complaint, Professor Sweeney directed a smear campaign against him, publicly disclosed the investigation to other journalism school staff, and "relayed discriminatory animus" to Mr. Anaya during his investigation of the second complaint made against Plaintiff. (ECF No. 1 at 19-20). Plaintiff alleges that during this time, Professor Sweeney and Mr. Anaya revived a past sexual assault complaint against Plaintiff that had been made, investigated, and dismissed in 2012. (*Id.* at 20-21). Plaintiff argues that Mr. Anaya contacted the former student, had her reformulate her story to accuse Plaintiff of further wrongdoing, and used that information to conclude that Plaintiff had violated OU's sexual harassment policy. (*Id.* at 20-21). On May 30, 2019, Mr. Anaya released another report concluding that Plaintiff's conduct

3

was "severe enough to create an intimidating, hostile, and offensive educational and work environment," which Plaintiff alleges was in retaliation for Plaintiff naming Mr. Anaya as a defendant in his civil litigation. (*Id.* at 21-22).

Plaintiff alleges that in October 2019, Provost Djalali initiated the University Professional Ethics Committee ("UPEC") to review the third and oldest student complaint from 2012. (*Id.* at 22). Plaintiff argues that the UPEC was composed of only white faculty and that UPEC refused to interview him or consider his evidence. (*Id.* at 22-24). Instead, Plaintiff argues, UPEC issued a report in November 2019 "rubber-stamping" Mr. Anaya's conclusions and recommending Plaintiff for de-tenure. (*Id.*). Director Stewart also wrote a letter on behalf of the journalism faculty recommending Plaintiff for de-tenure, which Plaintiff argues was a false misrepresentation because many of the staff did not believe Plaintiff should be de-tenured. (*Id.* at 26). In response, Plaintiff filed a formal complaint against Director Stewart with OU's Equity and Civil Rights Compliance office alleging prejudice and conducting a procedurally flawed review of the claims against Plaintiff. (*Id.* at 27). Plaintiff maintains that Dean Titsworth then refused to meet with Plaintiff to hear his side of the story, and instead stripped Plaintiff of any monetary compensation and sent a letter to the university's provost recommending loss of tenure. (*Id.* at 27). During this time, Plaintiff also filed three other complaints for discrimination based on race and national origin against Director Stewart, Dean Titsworth, and Provost Sayrs, investigations which he claims were undermined by senior university officials. (*Id.* at 31).

On September 11, 2020, Plaintiff filed a new civil action against OU alleging that during their investigations of the complaints, OU: (1) discriminated against him on account of his race, national origin, and gender; and (2) violated his right to contract under 42 U.S.C. § 1981 and Ohio state law. (ECF No. 13 at 2; *see Kalyango v. University of Ohio*, Case No. 2:20-cv-4729).

4

Defendants allege that Plaintiff's claims were based on an Equal Employment Opportunity Commission ("EEOC") charge he had filed on April 11, 2019 for race and national origin discrimination and retaliation, but not sex discrimination. (*Id.*). On April 29, 2021, that case was dismissed without prejudice. (ECF No. 17). On May 24, 2021, Plaintiff filed a complaint against OU in the Ohio Court of Claims alleging the same state-law causes of actions alleged in this case. (ECF No. 13 at 3). That case has been stayed pending the outcome of this action.

Plaintiff maintains that OU's Faculty Handbook section on de-tenure, requires an evidence-based hearing before the Faculty Senate Committee ("FSC") during which OU and the professor at issue can put forward exhibits, witness testimony, and arguments. (ECF No. 1 at 32). Plaintiff's faculty hearing occurred December 9–10, 2020, during which Plaintiff presented evidence from fourteen witnesses, including former students, professors, and other OU staff. (*Id.* at 32). The FSC determined the charges were not proven and recommended that Plaintiff be reinstated immediately. (*Id.* at 33). On March 1, 2021, the OU Board of Trustees objected to the FSC's findings and asked for the FSC's reconsideration. (ECF No. 23 at 9). Plaintiff alleges that on April 2, 2021, the FSC reaffirmed its decision, citing concerns about discrimination and retaliation against Plaintiff during the investigations. (*Id.*). The Board of Trustees rejected the FSC's renewed findings, revoked Plaintiff's tenure, terminated his employment on April 9, 2021, denied him severance, and refused to refund lost wages due to a furlough. (ECF No. 1 at 34). Plaintiff argues that the Board reversed the FSC's recommendation in reaction to public pressure and media scrutiny. (*Id.* at 25-36).

### B. EEOC Filings and Charges

In March 2019, Plaintiff sent a letter to the EEOC's Cleveland Field Office filing a charge of discrimination against OU for employment discrimination based on "race, gender, national origin, and retaliation." (ECF No. 23-1 at 1). With the letter, he submitted an EEOC Charge of

5

Discrimination form, that was not dated or signed, but with the boxes marked for discrimination based on race and national origin and retaliation. (*Id.* at 6). On April 11, 2019, Plaintiff filed another EEOC Charge of Discrimination form in the same case for the same period making the same allegations. (ECF No. 12-1 at 1). This had a slightly different description of the discrimination but was dated and signed by Plaintiff. (*Id.*). Plaintiff alleges that he requested a right to sue letter on April 29, 2020. (ECF No. 1 at 5). A right to sue letter was issued by the U.S. DOJ Civil Rights Division on July 23, 2020. (ECF No. 12-2 at 1).

Plaintiff also alleges that he filed a second EEOC Complaint on April 14, 2021, following his termination, alleging sex, race, and national origin discrimination. (ECF No. 23 at 2; 23-3). In his EEOC letter, Plaintiff included the following allegations: (1) when he attempted to appeal the de-tenure decision, in retaliation, President Nellis undermined the investigations of the complaints Plaintiff had brought against Dean Titsworth and Director Stewart; (2) that the OU Board of Trustees had undermined and disregarded the decision of the FSC to reinstate him; (3) that these actions resulted in a hostile, discriminatory employment action taken against him on the basis of race, national origin, and sex; and (4) the Defendants continue to violate his due process and equal protection rights. (ECF No. 23 at 10). Plaintiff states in his Complaint that he received another right to sue letter from the Ohio Civil Rights Commission on March 10, 2022 (ECF No. 1 at 2).

During all the investigations against him, Plaintiff alleges that OU officials failed to adhere to the mandatory investigation deadlines created by the Faculty Handbook and to protect his identity and the investigations from media scrutiny. (*Id.* at 23, 29-30). Plaintiff argues that as the only Black faculty member in his field, he was treated worse than other white professors who "had been accused of much worse." (*Id.*, ¶¶ 56, 60, 105, 110). Further, Plaintiff maintains that OU has

6

a policy to "accept uncorroborated statements of females to the detriment of non-Caucasian, non-native male, either students or professors," regardless of their truth or falsity. (*Id*. at 28).

Plaintiff maintains that this ordeal has caused him severe mental and emotional anguish, damaged his professional reputation, and negatively impacted his family. (*Id.* at 14-15). He seeks: (1) an injunction enjoining the University from engaging in discriminatory employment practices, requiring the University to provide equal opportunities for all employees, and reinstating him as a tenured professor; and (2) $75,000 in compensatory damages and back pay.

## II. PROCEDURAL HISTORY

Plaintiff filed his original complaint in April of 2022. (ECF No. 1). Defendant moved for judgement on the pleadings in June of 2022. (ECF No. 13). This Court granted in part and denied in part that Motion, dismissing without prejudice: Count I for race, national origin, and sex discrimination under Title VII and Counts IV–XVI under Ohio law for discrimination, retaliation, breach of contract, breach of administrative policies, and public policy violations. (ECF No. 29). This Court further dismissed with prejudice Count II under § 1981. (*Id.*). The remaining Count III for retaliation under Title VII was allowed to proceed. This matter is now ripe for review concerning Count III.

## III. STANDARD OF REVIEW

### A. Summary Judgment

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts."

7

*Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The mere possibility of a factual dispute is insufficient to defeat a motion for summary judgment. *See Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992). Summary judgment is inappropriate, however, "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The necessary inquiry for this Court is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. A mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient to survive the motion; there must be evidence on which the jury could reasonably find for the opposing party. *See Anderson*, 477 U.S. at 251; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995). It is proper to enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the nonmoving party has "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322 (quoting *Anderson*, 477 U.S. at 250).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013). Therefore, for purposes of Defendant's Motion, the Court will view the facts in the light most favorable to Plaintiff.

**B.  FLSA Retaliation Claim**

8

The Fair Labor Standards Act makes it unlawful to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted … any proceeding under or related to this chapter…" 29 U.S.C. § 215(a)(3). A plaintiff alleging retaliation under FLSA may offer either direct or circumstantial evidence to support her case. In discrimination cases, "direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Products Sales Corp.,* 176 F.3d 921, 926 (6th Cir. 1999). *See also Mansfield v. City of Murfreesboro*, 706 Fed. Appx. 231, 235 (6th Cir. 2017) (unpublished) (describing direct evidence in the context of FLSA claims). In most cases, the plaintiff "will be able to produce direct evidence that the decision-making officials knew of the plaintiff's protected activity…[b]ut direct evidence of such knowledge or awareness is not required…." *Mulhall v. Ashcroft*, 287 F.3d 543, 554 (6th Cir. 2002). Instead, a plaintiff may present circumstantial evidence which tends to show an improper reason for her dismissal.

If the plaintiff is offering circumstantial evidence, the court engages in the familiar *McDonnell Douglas* burden-shifting analysis, established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The Sixth Circuit has applied that burden-shifting to FLSA retaliation claims. *Moore v. Freeman*, 355 F.3d 558 (6th Cir. 2004). This familiar test has four parts. To establish a *prima facie* case of retaliation, an employee must prove: (1) she was engaged in a protected activity under the FLSA; (2) her exercise of this right was known by the employer; (3) she was the subject of an adverse employment action; and (4) there is a causal connection between the protected activity and the adverse employment action. *See Williams v. Gen. Motors Corp.*, 187 F.3d 553, 568 (6th Cir. 1999). A *prima facie* showing of retaliation "creates a presumption that the employer unlawfully discriminated against the employee." *St.*

*Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). If the plaintiff can establish such a case, the burden then shifts to the defendant to offer a legitimate, non-discriminatory – or, as here, non-retaliatory – reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. If the employer is able to do this, the burden shifts back to the plaintiff, who must now prove by a preponderance of the evidence that the proffered reasons were mere pretext and not the true reasons for the adverse action. *Kocsis v. Multi-Care Mgmt., Inc.,* 97 F.3d 876, 883 (6th Cir. 1996). *See also Adair v. Charter Cty. of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006).

## IV. LAW & ANALYSIS

Title VII prohibits an employer from "discriminat[ing] against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A Plaintiff must show that he has suffered an adverse employment action, defined as a "materially adverse" change in the terms or conditions of employment because of the employer's action. *Nguyen v. City of Cleveland*, 229 F .3d 559, 562 (6th Cir. 2000). Title VII also prohibits an employer from retaliating against an employee because of that individual's exercise of protected conduct. 42 U.S.C. § 2000e-3(a).

When a plaintiff cannot show a Title VII claim directly, the *McDonnell Douglas* burden shifting test applies. *See Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 784 n.6 (6th Cir. 2016). A plaintiff claiming she was discriminated against has "the initial burden under the statute of establishing a *prima facie* case of discrimination." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To establish a *prima facie* case, Plaintiff must show:

> (1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.

*Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000).

Here, Plaintiff has produced no direct evidence of retaliatory intent on the part of the Board, so the test will apply. If the plaintiff can show a *prima facie* case, the defendant then bears the burden "articulate some legitimate, nondiscriminatory reason" for its actions. *McDonnell Douglas Corp.*, 411 U.S. at 802. The plaintiff then must show "that the proffered reason was not the true reason for the employment decision." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

### 1. McDonnell Douglas Step One: The Prima facie Case

#### a. Protected activity

A plaintiff may satisfy the pleading requirement for protected activity by "alleging conduct" that falls within one of two clauses in the statute, which says it is an:

> unlawful employment practice for an employer to discriminate against any of his employees ... [1] because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or [2] because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

*Hamade v. Valiant Gov't Servs., LLC*, 807 F. App'x 546, 549 (6th Cir. 2020) (quoting 42 U.S.C. § 2000e–3(a)). Accordingly, "[t]he first clause is known as the "opposition clause," and the second as the "participation clause." *Id.* The "Supreme Court has held that the term "oppose" should be interpreted based on its ordinary meaning: "[t]o resist or antagonize … ; to contend against; to confront; resist; withstand." *Jackson v. Genesee Cty. Rd. Comm'n*, 999 F.3d 333, 344 (6th Cir. 2021) (citing *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009)). Additionally, "[e]xamples of opposition activity protected under Title VII include complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices; [and] refusing to obey an order because the worker thinks it is unlawful under Title VII." *Id.* (citing *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 721 (6th Cir. 2008) (internal quotations

11

omitted)). The opposition clause protects not only the filing of formal discrimination charges with the EEOC, but also complaints to management and less formal protests of discriminatory employment practices. *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014).

The plaintiff also must express his opposition in a reasonable manner. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 580 (6th Cir. 2000). For example, "[a]n employee is not protected when he violates legitimate rules and orders of his employer, disrupts the employment environment, or interferes with the attainment of his employer's goals." *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1312 (6th Cir. 1989). Finally, the plaintiff himself must have a "reasonable and good faith belief that the opposed practices were unlawful." *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 345 (6th Cir. 2021) (quoting *EEOC Compliance Manual,* (CCH) ¶ 8006); *see also Keys v. U.S. Welding, Fabricating & Mfg., Inc.,* No. CV91–0113, 1992 WL 218302, at *5 (N.D. Ohio Aug. 26, 1992) (noting that "[u]nder § 704(a) of Title VII, [the plaintiff] needed only a 'good faith belief' that the company practice about which he was complaining violated Title VII; it is irrelevant whether the allegations are ultimately determined to violate Title VII").

Plaintiff puts forth evidence of multiple actions that meet the opposition clause definition of protected activity under Title VII: (1) lobbying Director Stewart to intervene in Professor Sweeney's alleged discriminatory admissions practices; (2) filing an EEOC complaint in April 2019 alleging retaliation and race, national origin, and sex discrimination; and (3) filing multiple internal complaints against Stewart, Titsworth, and Sayrs for race and national origin discrimination after they removed him from the classroom prior to the UPEC review. While Plaintiff expressed disdain for the sanctions levied against him, there is no evidence that he violated orders from his employer following the sanctions. Because Plaintiff denied the harassment

allegations against him, Plaintiff has asserted a reasonable belief that the investigations, sanctions, and ultimate termination of his position were motivated by discriminatory animus in retaliation for him raising employment discrimination concerns both internally to OU and externally with the EEOC.

### b. Exercising protected rights and c. adverse employment action

Plaintiff meets the second and third prongs required to establish a *prima facie* case for retaliation under Title VII. Plaintiff reasonably believed that the investigations against him, the process by which he was recommended for de-tenure, and his subsequent termination were conducted in an unlawful manner. Termination is plainly an adverse employment action and defendants were aware of Plaintiff's opposition through his first EEOC complaint and Plaintiff's participation in two federal lawsuits.

### d. Causal connection

Finally, the fourth part of the test requires "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360–62 (2013). A plaintiff must show that his "protected activity was a but-for cause of the alleged adverse action by the employer." *Id.* at 352. A causal link may be shown through knowledge combined with closeness in time that creates an inference of causation. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 582 (6th Cir. 2000). Although temporal proximity, alone, will not support an inference of discriminatory retaliation, closeness in time between the EEOC filing and the adverse employment action is relevant to evincing the employer's intent. *Id.* at 582–83; *see also Cooper v. City of North Olmsted*, 795 F.2d 1265, 1272–73 (6th Cir. 1986) ("The mere fact that [the plaintiff] was discharged four months after filing a discrimination claim is insufficient to support an inference of retaliation."). Where time elapses

between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must "couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). An intervening "legitimate reason[] to discipline … dispels an inference of retaliation based on temporal proximity." *Waske v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 472 (6th Cir. 2012) (finding that the legitimate reason was that plaintiff left the job site without permission after making a complaint of sexual touching to a supervisor).

Even though the EEOC complaint that was related directly to Plaintiff's termination was filed after his termination in April 2021, Plaintiff presents sufficient evidence to establish a causal connection for purposes of retaliation. Plaintiff took action in response to what he alleges were unlawful internal investigations against him as far back as March of 2019 when he filed cross claims against OU in a prior case. More than a year later, in September 2020, Plaintiff filed his own action against OU alleging discrimination. During the same time period that Plaintiff filed federal litigation and internal complaints against OU staff who were involved in the de-tenuring process, the internal investigations into the harassment claims against him progressed and culminated in termination. From the beginning of the investigations into Plaintiff, he maintains that the investigators disregarded the evidence he presented to counter the harassment claims and flouted the investigatory procedures laid out in the Faculty Handbook. Additionally, the decision to place him on paid, administrative function does not constitute an intervening legitimate reason to defeat the inference of retaliation, because Plaintiff took no wrongful action for which he was disciplined in between the beginning of the investigations and his termination. Even though more than two years passed from the beginning of the investigations to termination, Plaintiff asserts that the process of de-tenure and termination was replete with wrongful conduct because he challenged

14

OU's conduct, which robbed him of due process. Taking Plaintiff's evidence in the light most favorable to him, he plausibly establishes a *prima facie* case of retaliation.

### 2. McDonnell Douglas Step Two: Legitimate, Non-Discriminatory Reason

Defendant now bears the burden to "articulate some legitimate, nondiscriminatory reason" for its actions. *McDonnell Douglas Corp.*, 411 U.S. at 802. Here, Defendant's burden is merely one of production, not persuasion; it involves "no credibility assessment." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). It is sufficient if a defendant "explains what he has done" or "produces evidence of legitimate nondiscriminatory reasons." *Bd of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 25 n.2 (1978). Defendant offers in explanation that it terminated Plaintiff because of the allegations against him and the Board's internal findings. (ECF No. 32 at 11). This is a sufficient explanation and will be accepted as a legitimate reason.

### 3. McDonnell Douglas Step Three: Pretext

Once the employer has offered legitimate, non-discriminatory reasons for its actions, the burden shifts back to the plaintiff to show that those articulated reasons are not, in fact, the true reasons for the employer's actions. A plaintiff can show pretext in one of three ways by showing that the employer's stated reason:

> (1) had no basis in fact, (2) did not actually motivate the employer's action, or (3) were insufficient to motivate the employer's action. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994). A defendant's proffered reason cannot be proved to be a pretext "unless it is shown both that the reason was false, and that discrimination [or retaliation] was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

*Harris v. Metropolitan Government of Nashville and Davidson County, Tenn.*, 594 F.3d 476, 486 (6th Cir. 2010).

Additionally,

> [i]f the employer had an honest belief in the proffered basis for the adverse employment action, and that belief arose from reasonable reliance on the

15

> particularized facts before the employer when it made the decision, the plaintiff will fail to establish the basis for the decision was pretextual. *Braithwaite v. Timken Co.,* 258 F.3d 488, 494 (6th Cir.2001) (citation omitted); *Smith v. Chrysler,* 155 F.3d 799, 807 (6th Cir.1998) ("In deciding whether an employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.").

*Halfacre*, 221 F. App'x at 430.

Here, Plaintiff argues that his termination was pretextual because Defendant's stated reason did not actually motivate its action, *Manzer*, 29 F.3d at 1084, and that his evidence tends to prove that an illegal motivation was more likely than that offered by the Defendant. *See Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012). The Board of Trustees claims that it terminated plaintiff after its own thorough investigation. Following the Faculty Senate Hearing Committee's investigation, the Committee concluded that "the revocation of Dr. Kalyango's tenure was not warranted and strongly recommend his reinstatement without delay as a tenured (full) professor with all rights and privileges accorded thereto." (ECF No. 37 at 19). The Board issued objections and asked the Committee to revisit the case. The Committee *again* found that Plaintiff's termination was not warranted and specifically referenced troubling aspects of the appeal process relating to retaliation and bias within the College of Communications. (*Id.*). The Board, however, ignored the Committee's twice-considered decision and decided to terminate Plaintiff anyway.

Viewing the evidence in the light most favorable to Plaintiff, it is clear that the Committee conducted a thorough investigation. The Board, meanwhile, conducted a cursory inquiry into Plaintiff and chose to terminate him *in spite of* the Committee's recommendation. The Board's stated reason for terminating Plaintiff appears to be a false motivation when measured against the

16

Committee's extensive investigation. As a result, Plaintiff has met the final *McDonnell Douglas* criterion and summary judgement is inappropriate at this stage.

## V. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgement is **DENIED**.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: March 18, 2024**

17